190 N.J. Super. 394 (1983)
463 A.2d 969
JOSEPH P. GALLAGHER, PLAINTIFF-RESPONDENT,
v.
MAYOR AND COUNCIL OF THE TOWN OF IRVINGTON, DEFENDANT-RESPONDENT, AND THOMAS J. McGOTTY, DEFENDANT-APPELLANT, AND CIVIL SERVICE COMMISSION, STATE OF NEW JERSEY, AMICUS CURIAE.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1983.
Decided July 11, 1983.
*395 Before Judges BOTTER, POLOW and BRODY.
Edward F. Petit-Clair argued the cause for appellant (Petit-Clair & Graves, attorneys; William E. Graves, of counsel and on the brief).
*396 Alan A. Siegel argued the cause for respondent Town of Irvington.
Susan S. Singer argued the cause for respondent Gallagher (Brown, Brown & Furst, attorneys; Susan S. Singer, on the brief).
Mark J. Fleming, Deputy Attorney General, argued the cause for amicus curiae Civil Service Commission (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Mark J. Fleming, on the brief).
The majority opinion of the court was delivered by BRODY, J.A.D.
The Law Division held that N.J.S.A. 40A:14-9.4 ("§ 9.4") disqualified defendant Thomas McGotty for appointment to the office of fire chief in the Town of Irvington because he was a nonresident who scored below plaintiff, a resident who scored highest on the promotion test. The judge vacated McGotty's appointment in a reported opinion. Gallagher v. Irvington, 184 N.J. Super. 225 (Law Div. 1982). We hold that § 9.4 creates a preference for a resident over a nonresident in a civil service municipality only when they tie for third place thereby causing the appointment process to be stymied unless the tie is broken. That is not the case here. We therefore reverse.
The operative statutory language, applicable to civil service municipalities such as Irvington (§ 9.4) and to municipalities without civil service (N.J.S.A. 40A:14-9.6), reads:
In any municipality ... promotions to positions on the paid or part-paid fire department and force shall be based upon merit as determined by suitable promotion tests for such positions, provided however that a resident shall be appointed rather than a nonresident thereof in any instance in which the resident and nonresident achieved the same final average score in such test....[1]
*397 Section 9.4 literally applies only in case of a tie between a resident and nonresident who achieved "the same final average score." Its essential tie-breaking nature has been noted. Terry v. Mercer Cty. Freeholder Bd., 86 N.J. 141, 150 (1981) ("fire departments are to prefer a resident if two applicants obtain the same score"); In re Leary, 180 N.J. Super. 557, 559 (App.Div. 1981), rev'd on other grounds, 91 N.J. 151 (1982) ("creation of... promotional preference for residents having the identical qualifications as nonresidents"); Smith v. Newark, 128 N.J. Super. 417, 431 (Law Div. 1974), rev'd on other grounds, 136 N.J. Super. 107 (App.Div. 1975) ("the tie-breaking preference provided for in the challenged legislation is not unreasonable").
The problem arises from the statutory language "a resident shall be appointed rather than a nonresident" when they tie. If that language compels appointment of the tied resident, the statute would only make sense when applied in a municipality that has a system requiring appointment of the highest scorer. However, the statutory system for appointment in municipalities with civil service permits the appointing authority to appoint any one of the top three eligibles as certified by the Civil Service Commission. N.J.S.A. 11:22-16. Thus, if a certified resident and a nonresident tie for first or second place, compelling the appointing authority to appoint the tied resident would eliminate the appointing authority's rule-of-three discretion. It would also bring about an absurd result where there is a tie for second. The appointing authority in such a case would be compelled to appoint the resident who tied for second over the highest scoring candidate who may also be a resident.
An absurd result must be avoided in interpreting a statute. Marranca v. Harbo, 41 N.J. 569, 574 (1964). The trial judge eliminated the possibility of such an absurd application by concluding that § 9.4 is not a tie-breaker. He read the statute as disqualifying any nonresident candidate who does not do better on the test than the highest scoring certified resident. Put another way, he construed § 9.4 "to grant a preference to a *398 [meaning "any"] resident whose test score equals or exceeds that of a nonresident." Gallagher, supra, 184 N.J. Super. at 235.
In interpreting a section of a statute, "primary regard must be given to the fundamental purpose" of the underlying legislation. See N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338-339 (1972). Our task is to harmonize the section with the purpose of the whole. Brown v. Brown, 86 N.J. 565, 576-577 (1981). We must also read this section in pari materia with other statutes which deal with the "same matter or subject" and "seek to achieve the same overall legislative purpose." See Mimkon v. Ford, 66 N.J. 426, 433 (1975).
Section 9.4 was part of L. 1972, c. 3, which prohibits any municipality from requiring residency as a condition of initial appointment or promotion in paid and part-paid fire (N.J.S.A. 40A:14-9.1) and police (N.J.S.A. 40A:14-122.1) departments. Abolishing residency requirements was the fundamental purpose of the 1972 act as is apparent from the accompanying legislative statement which reads in part:
This bill changes the residency requirement for policemen and firemen to the State of New Jersey.
... This bill prohibits any municipality from passing an ordinance requiring local residency by members of its police and fire departments. [Statement, Senate No. 452, L. 1972, c. 3.]
However § 9.4 is interpreted, it must be seen as an aberrant vestige of the residency requirement for appointment and therefore contrary to the fundamental purpose of the legislation viewed as a whole. Harmonizing that section with the purpose of the underlying legislation requires that we limit its application to the exceptional case. A return to any broader residency requirement is best left to a clear legislative enactment.
Indeed, such a return has already been accomplished by the adoption of L. 1976, c. 132, N.J.S.A. 40A:14-10.1a, which repealed the abolition of residency requirements to permit favoring residents as a class over nonresidents by the use of separate lists of eligibles. However, this return to favoring residents is confined to initial appointments. The abolition of residency *399 requirements for promotion appointments remains unchanged. The statement accompanying the 1976 act demonstrates that the Legislature was keenly aware of the narrow scope of § 9.4 which it left intact when it expanded the residency preference only for those initially appointed:
Statutory requirements that policemen and firemen reside within the municipalities they serve have been abolished by P.L. 1972, c. 3. The new law also forbids municipalities to enforce any such residency requirement by local ordinance or regulation.
In signing the new law, Governor Cahill pointed out that residency would be "encouraged on a voluntary basis." P.L. 1972, c. 3 provides that a resident be favored over a nonresident, in appointment or promotion, whenever both the resident and nonresident score identically upon civil service tests (or similar competitive tests in municipalities not operating under civil service).

This bill is intended to establish a more substantial preference for local residents, with respect to initial appointments. It provides that whenever residents of the municipality qualify for appointment to vacant positions (regardless of their exact scores of any competitive examination) they shall be appointed, or offered appointments, before nonresidents. Similarly, residents of the county in which the municipality is located would be appointed or offered appointments before noncounty residents, and State residents before out-of-State qualifiers. .. . [Statement, Senate No. 714 (L. 1976, c. 132), emphasis supplied.]
Section 9.4 must also be read in pari materia with N.J.S.A. 11:22-16 which establishes the rule-of-three. Both statutes are implicated in the legislative objective of ensuring appointment based on merit as determined by competitive examinations while affording the appointing authority some discretion to accommodate other merit criteria. N.J.S.A. 11:22-16 reads in pertinent part:
[T]he [civil service] commission shall certify to the appointing authority the names and addresses of three candidates willing to accept employment standing highest on the register for the class or grade in which the position belongs. The appointing authority shall select one of the three so certified.
N.J.S.A. 11:23-4 directs how the register of eligibles shall be prepared. It reads:
11:23-4. Class register of eligibles prepared

The commissioners shall, from the returns or reports of examiners or from the examinations made by the commission, prepare a register for each grade or class of positions in the classified service of a county, municipality or school district operating under this subtitle, of the persons attaining the minimum mark as may be fixed by the commission for any part of such examination and whose *400 general average standing upon examination for such grade or class is not less than the minimum fixed by the rules of the commission, and who are otherwise eligible. Such persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination.
The trial judge's expansive interpretation of § 9.4 reduces rule-of-three discretion by disqualifying otherwise certifiable nonresidents who fail to do better on the test than the highest scoring certified resident even though there is no tie.
Applied in a civil service municipality, § 9.4 should be limited to the single instance when a tie produces an impasse in the appointing process, i.e., a tie in the test scores of a resident and a nonresident for third place on the register. Because the rule-of-three necessitates eliminating one of the tied eligibles, § 9.4 operates to eliminate the nonresident. This is the interpretation advocated by the amicus Civil Service Commission.
We realize that this interpretation results in not applying the tie-breaking language of § 9.4 where there happens to be a tie between a resident and a nonresident for first or second place in a civil service municipality. To disqualify a nonresident who ties a resident for first and permit appointment of a nonresident who scores third is as absurd a result as requiring appointment of a resident who ties a nonresident for second over a resident who scores first. Any interpretation of § 9.4 must depart from a literal application to avoid an absurd result. Our interpretation looks beyond the fortuity of a tie to whether there is a necessity for breaking it.
Our dissenting colleague emphasizes that § 9.4 provides "a resident shall be appointed ..." and not that a resident shall be certified for appointment. We do not read § 9.4 as literally requiring appointment of a resident. The whole phrase used in § 9.4 is that "a resident shall be appointed rather than a nonresident" (emphasis added) when they are tied. So long as the nonresident who tied is not appointed, the statutory mandate is satisfied. Section 9.4 serves only to disqualify the nonresident who ties; it does not literally compel appointing a resident or disqualifying any other nonresident.
*401 While ties for third place may be rare, they are of sufficient concern to the Commission that it has adopted elaborate criteria for breaking ties to determine which candidate to certify in instances where the Legislature has provided no other method. N.J.A.C. 4:1-9.6, 4:2-9.1, and 4:3-9.1.
The interpretation given § 9.4 by the trial judge results in disqualifying all nonresidents who take the test and do not do better than the highest scoring certified resident. By its footnote 7, the dissent implies that this interpretation would not violate the rule-of-three where there are residents who scored below third. In such instances under its regulations the Commission would replace disqualified nonresidents with the lower scoring residents. An important justification for the rule-of-three is that it provides the appointing authority three candidates whose merit has been established by achieving the highest test scores. Replacing any of them with lower scoring candidates ill-serves the rationale for the rule.
The interpretation of § 9.4 given by the trial judge is contrary to the general purpose of the underlying legislation to abolish residency requirements, it reduces rule-of-three discretion, and it applies an exceptional remedy expressly reserved by the Legislature for the rare case of a tie to the usual case where there is no tie at all. The interpretation we have given § 9.4 suffers from none of these infirmities and seems to us consistent with overall legislative intent. That intent is not to favor residents when considering merit, but to favor residents only when merit considerations are equal.
Reversed.
BOTTER, P.J.A.D., dissenting.
I would affirm the judgment entered by Judge Baime in the trial court largely for the reasons expressed in his opinion. 184 N.J. Super. 225 (Law Div. 1982). In my view, the preference for promotional appointment created by N.J.S.A. 40A:14-9.4 *402 ("§ 9.4")[1] in favor of a resident whose examination score is equal to that of a nonresident means, a fortiori, that a resident with a higher score than a nonresident must also be preferred for the promotion. In other words, the statutory preference for the resident with a higher score than a nonresident. For this and other reasons, I dissent.
It is difficult to give § 9.4 any reading that does not produce some anomalies. The Attorney General argues for a departure from a strict application of its literal terms according to the practice of the Civil Service Commission. The majority opinion has adopted that interpretation. Reading the statute in pari materia with the rule-of-three law, N.J.S.A. 11:22-16, the majority opinion holds that the clause, "a resident shall be appointed rather than a nonresident" in cases where they have a tie score on a promotional examination, applies only to cases where the candidates "tie ... for third place on the register," and merely serves to eliminate the nonresident from the list of three eligibles. In my view, this interpretation alters the statute beyond anything suggested in its language or history and would make the statute largely meaningless. Because it is so unlikely that a tie for third place alone will ever occur, the majority's interpretation means that the statutory preference for residents would probably never be applied. For these reasons and because the statute can be given a reasonable interpretation, I cannot agree with the majority's opinion.
*403 In late 1980 five individuals took a civil service promotional examination for the position of fire chief of the Town of Irvington. Plaintiff Joseph Gallagher and appellant Thomas McGotty were two of the five individuals. Gallagher's oral score of 96.775 and final average of 93.611 were substantially higher than McGotty's oral score of 81.700 and final average of 82.188. Gallagher, an Irvington resident, was ranked first, and McGotty, a nonresident,[2] was ranked third.[3] Gallagher also had greater seniority than McGotty. Nevertheless, on March 23, 1981 McGotty was appointed fire chief, and the governing body confirmed the appointment.[4]
The trial judge's opinion recognized that appointing authorities have long had the discretion to select one of three individuals who stand highest among candidates for appointment to a position. This "rule-of-three" principle is embodied in N.J.S.A. 11:22-16. It is designed to allow discretion in appointments because some characteristics in performance may not be adequately reflected by examination scores. The rule-of-three requires the Civil Service Commission to certify to an appointing authority three eligibles, namely, "three candidates willing to accept employment standing highest on the register for the class or grade in which the position belongs." N.J.S.A. 11:22-16. The statute further provides that the appointing authority *404 "shall select one of the three so certified." Ibid. As noted by the trial judge, this discretion is narrowed by statutory preferences given to veterans. See Marranca v. Harbo, 41 N.J. 569, 576 (1964). Except for statutory preferences, candidates placed on an eligibility list simply have the right to be considered for appointment should an appointment be made during the life of the list. Lavitz v. Civil Service Comm'n, 94 N.J. Super. 260, 264 (App.Div. 1967).
Before 1972, all officeholders were required to reside within the municipality by which they were employed. N.J.S.A. 40:11-1. The Legislature enacted the present statutory scheme in 1972. L. 1972, c. 3. The statute provided that residence cannot be made a condition of employment or promotion for members of a fire department in any municipality. N.J.S.A. 40A:14-9.1. However, preference was granted to residents over nonresidents by sections 3 and 5, as to initial appointments in Civil Service and non-Civil Service municipalities, and by sections 4 and 6 as to promotions. As noted, § 9.4 provides "that a resident shall be appointed rather than a nonresident" whenever the resident and nonresident "achieved the same final average score in such [promotional] test." The preference for residents on initial appointments was expressed in the same fashion. N.J.S.A. 40A:14-9.3 and -9.5 (since superseded by N.J.S.A. 40A:14-10.1a).[5]
McGotty contends that § 9.4 does not come into play at all because his final average score did not tie with the final average score of any other candidate. This contention was rejected by my colleagues. They read § 9.4 as disqualifying a nonresident only in the case where the nonresident ties with a resident for third place and a choice between them must be made to determine *405 the list of three highest eligibles.[6] The obvious weakness in the majority's position is that § 9.4 does not say that a resident shall be given preference on the list of three eligibles in case of a tie for third place with a nonresident. Section 9.4 provides that "a resident shall be appointed rather than a nonresident" in case of a tie. The Legislature was cognizant of the difference between appointment and eligibility for appointment. See N.J.S.A. 11:22-16 and N.J.S.A. 11:23-4. N.J.S.A. 11:9-9, dealing with state service, provides for the establishment of an employment list of persons "eligible to appointment" to a vacancy in public service. N.J.S.A. 40A:14-9.2, which was part of the same law by which N.J.S.A. 40A:14-9.4 was enacted, L. 1972, c. 3, speaks of persons "eligible for appointment" to a fire department. Thus, it is difficult to conclude that the Legislature intended to use residence only to break a tie in order to complete a list of the required number of eligibles for appointment to a position. The language in § 9.2 and § 9.4 expresses the Legislature's awareness of the distinction between these terms. The language "a resident shall be appointed rather than a nonresident" means that a resident shall be given preference in appointment over a nonresident in certain cases.
As noted above, appellant contends that § 9.4 should be read literally to apply only when a resident eligible ties with a nonresident eligible. This argument is also difficult to accept. This would mean that a nonresident with a lower score than that of a resident could be appointed although the resident would be preferred if their scores were equal. In other words, a literal reading of the statute produces the absurd result that a nonresident whose score is tied with a resident cannot be appointed but the nonresident could be appointed if his score is lower than that of the resident. I am constrained to reject this interpretation. I conclude that the only logical interpretation of *406 § 9.4 is that a resident whose score is equal to or higher than the nonresident's score must be given preference over the nonresident. The intention to prefer a resident over a nonresident when their scores are equal necessarily implies the intention to prefer the resident with a higher score.
Requiring the appointment of a resident over a nonresident when the resident has an equal or higher score does not eliminate the operation of the rule-of-three. Of three eligibles, a nonresident could still be appointed over a resident if no resident in the group has a higher score than the nonresident. The rule-of-three remains fully operative also when the three highest scoring candidates are all residents or are all nonresidents. Moreover, the statute favors certain residents only against certain nonresidents. Of three eligibles, a resident could be appointed over higher scoring residents and nonresidents alike. The choice among three eligibles is fully operative also when a nonresident has the highest score. The statute operates solely to bar the appointment of a nonresident when an eligible resident has an equal or higher score.[7]
The interpretation advocated here is consistent with the statement attached to the bill which became L. 1972, c. 3, N.J.S.A. 40A:14-9.1 et seq., and the statement issued by Governor Cahill when the bill was signed into law. The statement attached to 1972 Senate Bill No. 452 expressed the purpose of the law as eliminating the residency requirement for municipal police officers and firefighters because of the difficulty of recruiting new employees, and vaguely referred to the preference for residents in certain cases. In signing the bill Governor Cahill issued a statement which included the following comments:

*407 Under the terms of the bills, S-452 prohibits making residency a condition of employment for police and firemen. It stipulates, however, that in instances where a resident of a municipality and a non-resident receive the same score on a civil service examination for appointment or promotion, the resident will be appointed or promoted prior to the non-resident.

"This will provide an incentive for police and firemen to reside in the municipality on a voluntary basis without any reduction in quality," the Governor said. He added that "preferences for veterans will not be diminished by this provision." [Emphasis added.]
Since 1972, the preference for residents over nonresidents has been expanded in cases of initial appointments. L. 1976, c. 132. The law now provides that residents as a class are to be preferred over nonresidents for initial appointment, regardless of the relative scores of individual candidates. N.J.S.A. 40A:14-10.1a, as to fire departments, and N.J.S.A. 40A:14-123.1a, as to police departments. While preference for promotional appointments was not similarly expanded, the preference for residents contained in § 9.4 based upon examination scores was continued. The same applies to promotions in police departments. N.J.S.A. 40A:14-122.4 and -122.6.
Reading the law as requiring a tie for third place only, and then giving the resident preference in filling the third place on the eligibility list, but not a preference in appointment, would render the statutory preference for residents largely meaningless. As noted above, final average scores are calculated to three decimal places. It is unlikely that tie scores will ever occur; but it is even more unlikely that candidates will tie only for third place. Interpreting the statute to apply only in cases of tie scores for any position or for third place means that it is unlikely that residents will obtain any benefit from the statutory preference in promotional appointments.[8]
*408 Thus, I conclude, the Legislature must have intended to give residents a preference in promotional appointments over nonresidents who attain equal or lower scores. This interpretation permits the rule-of-three to continue to operate. Other interpretations must be rejected because they were clearly not intended and would render the statute meaningless or produce absurd results. In the final analysis we must be guided by the internal sense of the law not merely the literal words used to express the legislative purpose. N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338-339 (1972). Accordingly, I would affirm.
NOTES
[1] The quoted language is taken from § 9.4. N.J.S.A. 40A:14-9.6 is identical except for two slight variations in sentence structure that do not affect meaning.
[1] N.J.S.A. 40A:14-9.4 provides:

In any municipality wherein Title 11 (Civil Service) of the Revised Statutes is operative, promotions to positions on the paid or part-paid fire department and force shall be based upon merit as determined by suitable promotion tests for such positions, provided however that a resident shall be appointed rather than a nonresident thereof in any instance in which the resident and nonresident achieved the same final average score in such test. The preference granted by this section shall in no way diminish, reduce or affect the preferences granted to veterans pursuant to chapter 27 of Title 11 of the Revised Statutes or any other provision of law.
[2] On this appeal McGotty does not challenge the trial judge's finding that McGotty was a resident of Edison and not Irvington. 184 N.J. Super. at 228-229.
[3] The scores of the other three candidates were:

 Final Average Seniority Oral Score
 2. Dougherty, J.D. 88.763 86.327 86.950
 4. Rocklin, A.G. 82.020 86.266 80.200
 5. Solewski, R.A. 81.600 86.266 79.000

[4] At oral argument, the Town's attorney said that McGotty was appointed on the assumption that he was an Irvington resident. The Town urges that the judgment below be affirmed.
[5] Similar provisions applicable to appointments to municipal police departments derived from the same law, L. 1972, c. 3, § 11 et seq.; N.J.S.A. 40A:14-122.1 et seq.; In re Leary, 91 N.J. 151, 155 (1982).
[6] No mention is made of ties between resident eligibles and additional eligibles in fourth or lower places whose names may be added when there is more than one appointment to be made. See N.J.A.C. 4:1-12.4(a)(2).
[7] Because the employing authority is entitled to a full list of three eligibles for each position, N.J.A.C. 4:1-12.14 provides for certification of a replacement for any candidate whose name is removed or withheld from the eligible list. Removal will occur if a candidate is by law made ineligible for appointment or employment in the position. N.J.A.C. 4:1-12.11(a)(8); N.J.A.C. 4:1-8.14(a)(4) and (b)(2).
[8] If the Civil Service mechanism for breaking ties, N.J.A.C. 4:1-9.6, were applied when residents and nonresidents tied for appointments to or promotions in police and fire departments, there would never be a tie score to which the statutory tie-breaking rule would apply. Thus, the regulation's tie-breaking mechanism must yield to the statutory tie-breaking rule which prefers residents over nonresidents.