**UNITED STATES of America, et al.**

v.

**State of NEW JERSEY, et al.**

**Nos. Civ.A. 77–2054, Civ.A. 79–104 NHP.**

United States District Court,
D. New Jersey.

March 3, 1999.

Henry Maurer, Division of Merit Systems Practices and Labor Relations, Administrative Appeals Unit A, Trenton, NJ, Barbara Thawley, U.S. Department of Justice, Civil Rights Division, Employment Litigation Section, Washington, DC, for plaintiffs.

Don Cantinello, Assistant Attorney General, Peter Verniero, Attorney General of NJ, Trenton, NJ, for State of New Jersey.

Richee–Lori Smith, Assistant Corporation Counsel, Michelle Hollar–Gregory, Corporation Counsel, Department of Law, Newark, NJ, for City of Newark.

### LETTER OPINION

POLITAN, District Judge.

This matter comes before the Court on the City of Newark's motion for an order restraining the State of New Jersey, Department of Personnel, Merit System Board, from enforcing its November 10, 1998 Decision ordering the removal of Edward Dunham from the position of Fire Chief for the City of Newark. The Court heard oral argument on January 26, 1999. For the reasons explained below, the City's motion is GRANTED.

### BACKGROUND

The facts surrounding this twenty-year-old litigation are well-known to the parties and need not be restated. It is sufficient to note that the dispute began with allegations of racially discriminatory employment practices at New Jersey fire departments. The parties eventually entered into a consent decree which provided, among other things, that the State of New Jersey would work with the United States Department of Justice, Civil Rights Division, and various New Jersey municipalities to develop new tests and standards for evaluating candidates for entry-level and supervisory positions. To that end, the Consent Decree directed the New Jersey Department of Personnel ("DOP") to develop, upon request by the City, job analyses for each position, and to work with the Department of Justice in writing new tests and standards.

With regard to the position of Fire Chief, little has happened since the Consent Decree was signed by the parties in 1980. For years, the City failed to request a job analysis and, as a result, the DOP has not performed one. This sad pattern of neglect continued until eventually—and inevitably—the position of Fire Chief became vacant during the summer of 1998. On July 1, 1998, the City, acting pursuant to N.J.S.A. 11A:4–13(c) and N.J.A.C. 4A:4–1.5, provisionally appointed then-Captain Edward Dunham to the position of Acting Fire Chief. The statute and regulations permit provisional appointments where the "appointee meets the minimum qualifications for the title at the time of the appointment."

On July 6, 1998, the Newark Fire Officers Union filed a complaint with the Division of Human Resource Management (HRM), alleging that Dunham lacked the "minimum qualifications for the title" Fire Chief and demanding that he be removed from the post. On October 6, 1998, the HRM determined that Dunham did not possess the requisite "five years of supervisory experience involving the extinguishing of fires," and ordered that he be removed. The Merit System Board affirmed the decision on November 10, 1998.

## DISCUSSION

The City of Newark seeks to enjoin the State from enforcing the DOP's decision on the ground that it would create a racially disparate impact in violation of the Consent Decree.[1] This Court does not reach the issue of disparate impact because it is clear, in this Court's judgment, that the removal of Chief Dunham would seriously undermine the purpose and spirit of the Consent Decree. That is, the Consent Decree reflected an agreement between the City of Newark, the State of New Jersey, and the Department of Justice to develop nondiscriminatory criteria for the selection of fire department personnel. With regard to the position of Fire Chief, this process has unfortunately lagged for many years, and the pre-Consent Decree Fire Chief requirements have still not been revised. The federal, state, and local governments each are responsible for this sad pattern of nonfeasance. But regardless of how that responsibility is apportioned, it surely would be fundamentally unfair—and inconsistent with the purpose of the Consent Decree—if Chief Dunham were to be removed from his post solely on the basis of a list of job requirements that should have been replaced years ago.

This Court has resolved to end the pattern of neglect that has plagued this litigation over the years. To that end, this Court entered an Order on February 1, 1999 directing that:

1. The United States shall submit to the State by January 28, 1999 any and all job analyses for the position of Fire Chief that have been approved by the United States in any jurisdiction in the country.

2. By February 3, 1999, the State shall submit to the United States a plan on how to proceed with the job analysis for the position of fire chief for all twelve consent decree jurisdictions.

3. By February 8, 1999, the State and the United States shall have a conference to discuss the State's proposal and any comments, suggestions and objections that the United States has to the proposal. In addition, the United States' experts will provide technical assistance to the State regarding the job analysis and the development of the exam.

4. The State shall submit to the Justice Department a job analysis and proposal for a selection procedure to the position of fire chief, along with a proposed announcement by March 29, 1999.

5. The United States will provide comments and/or objections to the State by April 12, 1999.

6. The United States and the State will then meet by April 14, 1999 to discuss the United States' comments.

7. With regard to the examination for Fire Captain, by February 9, 1999, the State shall submit a report to the United States and the Court as to a proposed schedule for development of the captain's examination.

8. With regard to the entry level firefighter examination, the State and the United States shall have a conference by February 8, 1999 to discuss the completion of the test development and a schedule for implementing the firefighter examination.

9. Any future schedules that are created as a result of meetings between the United States and the State will also be submitted to the Court

This schedule should put an end to the delays that have plagued this process for nearly twenty years. In the meantime, the strong public interest in preserving and enforcing the delicate settlement embodied in the 1980 Consent Decree warrants a continuation of the restraints imposed by this Court's October 28, 1998 Order. Of course, this Court expects that

---

1. The City also challenges the MSB's determination that Chief Dunham lacks the requisite "five years of supervisory fire experience involving the extinguishing of fires," but that issue is outside this Court's subject matter jurisdiction.

its February 1, 1999 scheduling Order will ensure that the duration of these restraints is short.

### CONCLUSION

For the reasons explained above, the City of Newark's application for a continuation of restraints is GRANTED, and the State of New Jersey, Department of Personnel, Merit Systems Board, is restrained from enforcing its November 10, 1998 decision to remove Edward Dunham from the position of Fire Chief. Upon notice, the parties may move to dissolve these restraints at any time.

### ORDER

THIS MATTER having come before the Court on the City of Newark's motion for a continuation of the restraints imposed by this Court on October 22 and October 28, 1998; and the Court having heard oral argument on January 26, 1999; and for the reasons explained more fully in the Court's Letter Opinion in the above-captioned matter; and for good cause shown

IT IS on this 3rd day of March, 1999,

ORDERED that the City of Newark's motion for a continuation of restraints be and hereby is **GRANTED**; and it is further

ORDERED that the defendant State of New Jersey be and hereby is restrained from enforcing the Department of Personnel's October 6 and November 10, 1998 decisions directing the removal of Fire Chief Edward Dunham; and it is further

ORDERED that these restraints shall continue until further order of this Court, and any party may move to modify or dissolve these restraints upon notice.