956 A.2d 386 (2008)
403 N.J. Super. 58
In the Matter of Kenneth R. MARTINEZ.
No. A-0090-07T2.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 2008.
Decided September 30, 2008.
*387 Craig S. Gumpel, Livingston, argued the cause for appellant Kenneth R. Martinez (Fox and Fox, LLP, attorneys; Mr. Gumpel, of counsel and on the brief; Benjamin Benson, on the brief).
Sean D. Dias argued, Lyndhurst, the cause for respondent City of Passaic (Scarinci & Hollenbeck, LLC, attorneys; Mr. Dias, of counsel and on the brief).
*388 Lisa Dorio Ruch, Deputy Attorney General, argued the cause for respondent Merit System Board (Anne Milgram, Attorney General, attorney; Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).
Before Judges CARCHMAN, R.B. COLEMAN and SABATINO.
The opinion of the court was delivered by SABATINO, J.A.D.
Kenneth R. Martinez, a Fire Captain in the City of Passaic ("the City"), appeals a final agency decision of the Merit System Board ("the Board") dated July 27, 2007. The Board's decision rejected Martinez's challenge to the promotion of another Fire Captain over him to Deputy Fire Chief, despite that other individual's lack of the requisite prior time-in-grade as a Captain. We affirm the Board's decision in part, vacate it in part, and remand the matter for further administrative action consistent with this opinion.

I.
Appellant Martinez has been employed in the City's Fire Department since 1990. He presently is one of several Captains in the Department. The rank of Captain is below the rank of Deputy Fire Chief.
On December 1, 2005, the City announced that a civil service examination would be administered for promotion to Deputy Fire Chief. For eligibility purposes, the promotional examination had a "closing date" of February 28, 2006.
According to the pertinent civil service criteria, an applicant must serve at least one year at the Captain's rank, as of the closing date, in order to be eligible to sit for the Deputy Chief examination.[1] It is undisputed that Martinez had accumulated more than a year of such continuous service as a Captain as of February 28, 2006, and therefore was eligible to take the Deputy Chief examination.
After submitting timely applications, Martinez and others in the Department sat for the Deputy Chief promotional examination on March 30, 2006.[2] The exams were then scored. Based on that scoring, Martinez was ranked first among the eligible non-veterans who took the examination. A promotional list reflecting that ranking, listing Martinez first, was promulgated by the State Department of Personnel on June 22, 2006.
On February 1, 2007, the City's incumbent Fire Chief retired. He was replaced as Chief by Deputy Chief Patrick Trentacost. Trentacost's elevation to Chief thus created a vacancy in the title of Deputy Chief. The following day, February 2, Trentacost issued an internal memorandum temporarily designating Martinez as Acting Deputy Chief "until further notice." Martinez assumed those duties for about two months. The City did not, however, take any action to make Martinez's promotion permanent.
As it turned out, the reason that Martinez was not appointed Deputy Chief was because the City was separately arranging for another candidate, Captain Christopher Szczygiel, to receive the promotion. The *389 relevant circumstances involving Szczygiel are as follows.
As of 2004, Szczygiel held the rank of Lieutenant within the Department. That same year, Szczygiel was ranked second on a promotional list for Captain. When vacancies in the Captain's rank were filled from that list, the City bypassed Szczygiel and instead appointed several lower-ranked individuals.[3] These events led Szczygiel to challenge his bypass in adversarial proceedings. Specifically, Szczygiel filed an administrative appeal before the Merit System Board, as well as a civil action in the Law Division against the City, the Mayor, and various other individuals. While those litigation matters were pending, Szczygiel was eventually elevated to Captain on April 11, 2005.
When the announcement for the Deputy Chief examination was circulated in December 2005, Szczygiel decided to pursue the promotion and sit for the test. He did so even though he had only been a Captain since April 2005 and would not have the one-year-in-grade qualification mandated by N.J.A.C. 4A:4-2.6(a)(1) as of the exam's February 28, 2006 closing date. Nonetheless, Szczygiel sat for the March 2006 exam with the other test-takers, including Martinez, while he continued to seek relief in litigation. Szczygiel's exam was not graded, however, pending the outcome of his lawsuit and related administrative appeal.
As a result of negotiations between Szczygiel and the City, a settlement of his litigation was attained in the latter part of 2006. Among other things, the proposed settlement terms included an agreement by the City to grant Szczygiel retroactive Captain status, effective as of June 25, 2004. That retroactive relief, in turn, would make Szczygiel eligible for promotion to Deputy Chief, because he now would be deemed to have accumulated more than one year of service as Captain before the promotional exam's closing date of February 28, 2006. Additionally, the City agreed to pay Szczygiel and his wife a substantial sum of money, inclusive of counsel fees, to resolve the claims raised in the litigation.[4] Before the end of 2006, the Board was advised of the pendency of the settlement between Szczygiel and the City. The Board was asked by those parties to ratify the settlement. Counsel did not furnish the Board with a copy of a written settlement agreement, or a draft agreement. Instead, counsel advised the Board of some, but not all, of the terms of the anticipated settlement.
Significantly, Martinez was not contemporaneously notified of the proposed settlement between the City and Szczygiel. Nor, apparently, were the other candidates on the Deputy Chief promotional list notified.[5] The Board entertained the proposed *390 settlement without any notice to Martinez, even though he was clearly and directly affected by it.
On January 31, 2007, the Board issued a final decision, approving the proposed settlement terms that the parties had disclosed to it. In that decision, I/M/O Christopher Szczygiel, Fire Captain, MSB Docket Nos. 2005-1345 and 2006-3165, the Board found "good cause" to "relax the provisions of N.J.A.C. 4A:4-2.6(a)(1) and accept the time [Szczygiel] served as Fire Captain after the closing date to satisfy the one-year-in-grade requirement and make him eligible for the Deputy Fire Chief [promotional] examination."[6] The Board further ordered that Szczygiel's results for the Deputy Chief exam "be scored as soon as possible and that if he passes, his name be immediately added to the eligible list." Perhaps sensing that the Board's disposition might be cited in other situations, the Board's decision in Szczygiel expressly indicated that:
It is noted that this remedy [of relaxing the one-year-in-grade requirement] is limited to the unique facts of this case and does not provide precedent in any other matter.
Although it was not disclosed at the time to the Board, the negotiated settlement terms went beyond simply recognizing additional service time for Szczygiel as a Captain and thereby would allow him to compete for the Deputy Chief position. In fact, the settlement further provided that Szczygiel would be guaranteed an appointment to Deputy Chief, so long as his exam grade, once it was scored by the Department of Personnel, proved to be higher than that of anyone else who sat for the exam.
A written settlement agreement memorializing the settlement terms was signed by the parties on March 22, 2007. It specifies in paragraph 1(a) that:
a. With Plaintiff Christopher Szczygiel's pending Deputy Chief promotional examination having been graded by the New Jersey Department of Personnel, if Plaintiff ranks first on the Deputy Chief's list, the City shall request that the list be certified confirming that Christopher Szczygiel is ranked # 1 on the list and Christopher Szczygiel shall be promoted to the position of Deputy Chief within 72 hours of receipt by the City of the certified list and upon receipt of this fully executed Confidential Settlement Agreement and Release resolving any and all claims between the parties.
[Emphasis added.]
However, if Szczygiel's exam score turned out to be in second place or lower, then he would not be guaranteed the promotion, and normal appointment procedures would be followed. This proviso, again one not contemporaneously disclosed to the Board before its approval in January 2007, appears in paragraph 1(b) of the agreement:
b. If Plaintiff Christopher Szczygiel does not rank first on the next Deputy Chief's list, then any future promotion shall be in accordance with New Jersey Department of Personnel Rules and *391 Regulations and be within the sole administrative discretion of the City of Passaic Appointing Authority.

[Emphasis added.]
The settlement also assured Szczygiel, if he was promoted to Deputy Chief because he scored first on the exam, that his promotion would be permanent. It further assured that he would remain in that title for at least 180 days, absent good cause for his removal. These assurances are set forth in paragraph 1(c):
c. If Plaintiff Christopher Szczygiel is promoted to the position of Deputy Chief as per paragraph 1(a) of the within agreement, Christopher Szczygiel will be deemed a permanent Deputy Chief in accordance with the rules and regulations of the Department of Personnel and he shall remain in the appointed position for a minimum of 180 days. Notwithstanding the foregoing, Plaintiff Christopher Szczygiel can be removed from the position of Deputy Chief "for cause" in accordance with the rules and regulations of the Department of Personnel.
Following the Board's approval of the settlement, the Department of Personnel graded Szczygiel's exam and determined that he had scored higher than all other candidates. It then generated a new promotional list for Deputy Chief ranking Szczygiel first, and placing Martinez second.
Consequently, the City appointed Szczygiel Deputy Chief on or about April 1, 2007. At the same time, Martinez was removed as Acting Deputy Chief and was returned to the Captain's rank. The Department of Personnel denied Martinez's emergent application to stay Szczygiel's appointment, pending further proceedings. As a result of the settlement and its implementation, Szczygiel's civil action in the Law Division was dismissed.[7]
These events prompted Martinez to file the present administrative appeal with the Board. Although Martinez was unable to obtain a copy of the settlement agreement from the Board (which did not possess it), he eventually obtained a copy in August 2007 through a formal request that he tendered upon the City under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13.
In his administrative appeal, Martinez raised several arguments. Among other things, he contended that the Board's ratification of the settlement, and the City's actions in guaranteeing Szczygiel the appointment if his exam placed first, violated the long-standing "Rule of Three" principle of New Jersey civil service law, as well as the Merit and Fitness Clause in Article VII, sec. 1, para. 2 of the State Constitution.
Martinez further argued that the Board's waiver of the one-year-in-grade requirement for Szczygiel violated the express terms of two Consent Decrees entered *392 into between the United States Department of Justice, the State Department of Personnel, and twelve New Jersey municipalities, including the City of Passaic. The Consent Decrees, which were successively issued by the United States District Court for the District of New Jersey in 1980 and 1990, were designed to remedy alleged discrimination against Hispanics and other minorities in the hiring and promotion of fire personnel in those localities.
Martinez, who is Hispanic and therefore within the class protected by the Consent Decrees, emphasizes that paragraph 7(b) of the 1980 Consent Decree specifically requires that:
The time-in-grade requirement for applicants for each fire department's first level supervisory rank, i.e., Lieutenant or Captain, shall be no more than three years; the time-in-grade requirement for applicants for each higher rank shall be one year.

[Emphasis added.]
Martinez contends that the Board and the City improperly deviated from this requirement, without receiving the permission of the Department of Justice or from the United States District Court that issued the Decree.
Martinez also raised various other claims, including contentions (1) that the actions of the City and the Department of Personnel were arbitrary and capricious; (2) that he had been improperly directed to serve as Acting Deputy Chief without a permanent appointment; (3) that he was improperly deprived of timely notice of the Szczygiel settlement; (4) that the civil service actions violated public policy; and (5) raising other arguments challenging the bona fides of Szczygiel's promotion.
Martinez's administrative appeal was joined by Fire Captain Joseph Cajzer,[8] who had been ranked third on the promotional list. Their arguments were endorsed by the Passaic County Fire Officers Association, which also appeared before the Board through counsel.
The City opposed Martinez's administrative appeal, contending that it had the prerogative to settle the litigation with Szczygiel on terms of its choosing. Those terms included the relaxation of the one-year-in-grade requirement, pursuant to the so-called "relaxation rule" of N.J.A.C. 4A:1-1.2(c). The City argued that there was "good cause" under N.J.A.C. 4A:1-1.2(c) to relax the service time requirement, and that, moreover, Martinez lacked standing under New Jersey law to challenge that decision. The City likewise argued that Martinez lacked standing to enforce the 1980 Consent Decree.
Szczygiel, represented by counsel, also participated in Martinez's administrative appeal. He likewise argued that Martinez lacked standing to attack his settlement with the City. Szczygiel further asserted that the City possessed the discretion, with the acquiescence of the Department of Personnel, to confer upon him retroactive seniority as a means of settling his bypass lawsuit. Further, Szczygiel emphasized that under the Rule of Three,[9] the City had the right to choose him over Martinez among the three highest-scoring test-takers.
In its July 27, 2007 final agency decision, the Board rejected Martinez's challenge. As a preliminary matter, the Board agreed with Martinez that he has standing under state law to challenge the grant of retroactive seniority to Szczygiel, and thereby Szczygiel's eligibility to take the Deputy *393 Chief examination. The Board recognized, in this regard, that those actions regarding Szczygiel did "impact the appellant's [Martinez's] opportunities for promotion."
On the merits, however, the Board disagreed with Martinez that Szczygiel's appointment should be set aside. Noting that there is a general public policy favoring the settlement of lawsuits, the Board found it unnecessary to explore whether the bypass claims that Szczygiel had brought against the City were or were not justified. The Board simply found that "it can be logically reasoned that Szczygiel's assertion that he was improperly bypassed must have some merit for the appointing authority to settle in the manner that it did."
The Board rejected Martinez's claim that the City was obligated to fill the Deputy Chief position promptly when it became vacant in February 2007. The Board observed that nothing in the law requires an appointing authority to fill all of its budgeted positions. Moreover, the Department of Personnel would have added Szczygiel's name to the promotional list after the Board had rendered its decision in I/M/O Szczygiel on January 31, 2007, which was one day before the Deputy Chief position became vacant.
Additionally, the Board rejected Martinez's contention that his designation as "Acting" Deputy Chief warranted his permanent appointment to that job title. The Board recognized that there is no legal designation of an "acting" appointment within the merit system rules, which instead only include the denominations of "regular," "conditional," "provisional," "interim," "temporary" and "emergency" appointments. See N.J.S.A. 11A:4-13. The fact that Martinez performed the Deputy Chief's functions for two months in an unauthorized "acting" capacity did not foreclose the City from carrying out its obligations under the settlement and selecting Szczygiel for the post.[10]
The Board additionally found that there was "good cause" in Szczygiel's case to authorize the relaxation of the one-year-in-grade requirement at the Captain's rank. As described by the Board, such good cause included "the agreement of the parties" to the Szczygiel litigation and "Szczygiel's actual service as a Fire Captain" for the "one year and ten months" preceding his elevation to Deputy Chief. In this regard, the Board did recognize that "the acceptance of experience after the [exam] closing date is uncommon in public safety eligibility appeals." Even so, "it has been a longstanding practice by the Board, when the circumstances warrant, to accept such [post-closing] experience."
As to Martinez's claim that the City's actions aiding Szczygiel violated the Rule of Three, the Board reasoned that no such violation occurred here because "Szczygiel is the number one ranked eligible [candidate] and no higher ranked eligibles [were] bypassed for appointment." The Board emphasized that none of the persons on the promotional list, including Martinez, had a vested right to an appointment. According to the Board, "[t]he only interest that results from placement on an eligible list is that the candidate will be considered for an applicable position so long as the eligible list remains in force."
Lastly, the Board concluded that awarding Szczygiel additional service time credit at the Captain's rank did not violate the 1980 Consent Decree. The Board reasoned that if Szczygiel had not been bypassed *394 by the City while he was a Lieutenant, he would have accumulated more than a year at the Captain's rank and satisfied the requirements of the Decree. In light of the wrongful bypass claims asserted in Szczygiel's litigation, the Board "found a sufficient basis to relax [the] rule and accept Szczygiel's experience after the closing date of the examination." The Board endeavored to "make Szczygiel whole and put him in the same position he would have been in if not for the bypass." Construed in this light, the Board asserted that it had not offended the Decree by relaxing the one-year-in-grade requirement. Instead, the Board had simply "accepted Szczygiel's experience gained after the closing date," which put him beyond the one-year milestone.
Martinez's appeal ensued. The City opposes the appeal, along with the Board, which submitted a statement in lieu of brief advocating that we affirm the decision and defer to the Board's expertise within the technical field of civil service law.[11]

II.
Article VII, sec. 1, para. 2 of our State Constitution prescribes that, except for hiring preferences awarded to military veterans, appointments and promotions in the civil service of the State's political subdivisions "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive[.]" N.J. Const. art. VII, § 1, ¶ 2; see also Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 232, 486 A.2d 305 (1985). This cornerstone principle of merit-based appointments is embodied in the Civil Service Act, N.J.S.A. 11A:4-1 to -16.
One of the central and time-honored facets of the Civil Service Act is what is known as the "Rule of Three." Pursuant to the statutes, after a civil service examination has been administered by the Department of Personnel, the Commissioner "shall certify the three eligibles who have received the highest ranking on an open competitive or promotional list against the first provisional or vacancy." N.J.S.A. 11A:4-8. "A certification that contains the names of at least three interested eligibles shall be complete and a regular appointment shall be made from among those eligibles." Ibid.; see also N.J.A.C. 4A:4-4.8. In essence, the appointing authority must select from one of the top three candidates ranked on the list.
The purpose of the Rule of Three is to provide the appointing authority with a limited degree of discretion in the selection of a candidate for a civil service position. Nunan v. N.J. Dept. of Personnel, 244 N.J.Super. 494, 497, 582 A.2d 1266 (App. Div.1990) certif. denied, 126 N.J. 335, 598 A.2d 892 (1991); Schroder v. Kiss, 74 N.J.Super. 229, 239, 181 A.2d 41 (App.Div. 1962). The dual legislative objectives served by the Rule are to "ensur[e] appointments based on merit as determined by competitive examinations while [still] affording the appointing authority some discretion to accommodate other merit criteria." Gallagher v. Mayor and Council of the Town of Irvington, 190 N.J.Super. 394, 399, 463 A.2d 969 (App.Div.1983) (emphasis added). See also In re Crowley, 193 N.J.Super. 197, 206, 214, 473 A.2d 90 (App.Div.1984) (explaining the Rule of Three).
The Rule of Three, while permitting "a broad exercise of discretion," also operates *395 to narrow that discretion. In re Hruska, 375 N.J.Super. 202, 210, 867 A.2d 479 (App.Div.2005); see also Terry v. Mercer County Bd. of Chosen Freeholders, 86 N.J. 141, 430 A.2d 194 (1981). As the Supreme Court instructed in Terry, "the discretion of government to hire is not absolute." Terry, 86 N.J. at 150, 43 A.2d 194. "`[O]ther important criteria in governmental employment practices' are still relevant." Hruska, supra, 375 N.J.Super. at 210, 867 A.2d 479 (quoting Terry, supra, 86 N.J. at 150, 430 A.2d 194).
Here, Szczygiel became one of the top three ranked candidates for Deputy Chief in March 2007 as a result of the Board's relaxation of the usual one-year-in-grade requirement of N.J.A.C. 4A:4-2.6(a)(1). The relaxation was authorized pursuant to the "good cause" standard of N.J.A.C. 4A:1-1.2(c).
More specifically, N.J.A.C. 4A:1-1.2 provides that the Commissioner of the Department of Personnel or the Merit System Board "may relax [the civil service] rules for good cause in a particular situation, on notice to affected parties, in order to effectuate the purposes of Title 11A [the civil service statutes]." See N.J.A.C. 4A:1-1.2. The multiple policies underlying Title 11A are enumerated at N.J.S.A. 11A:1-2. Those policies include a commitment (a) "to select and advance employees on the basis of their relative knowledge, skills and abilities;" (b) "to provide public officials with appropriate appointment, supervisory and other personnel authority to execute properly their constitutional and statutory responsibilities;" (c) "to encourage and reward meritorious performance" and "to retain and separate employees on the basis of the adequacy of their performance;" (d) "to ensure equal employment opportunity at all levels of the public service;" and (e) "to protect career public employees from political coercion" and "to ensure the recognition of such bargaining and other rights ... pursuant to other statutes and the collective negotiations law." N.J.S.A. 11A:1-2(a) through (e).
Otherwise stated, the Civil Service Act, as codified in Title 11A, was adopted in order to, among other things, "maintain stability and continuity" in public employment. Aparin v. County of Gloucester, 345 N.J.Super. 41, 55, 783 A.2d 271 (Law Div.2000), aff'd, 345 N.J.Super. 24, 783 A.2d 260 (App.Div.2001). See also Connors v. City of Bayonne, 36 N.J.Super. 390, 396, 116 A.2d 48 (App.Div.), certif. denied, 19 N.J. 362, 117 A.2d 203 (1955). We examine the Board's relaxation of the one-year-in-grade requirement concerning Szczygiel with these objectives in mind.
Despite Szczygiel's tenure of only about ten months as Captain between April 2005 and the February 2006 exam closing date, the Board found good cause to allow him to compete for the Deputy Chief position, because the City allegedly had wrongfully delayed his progress from the rank of Lieutenant to Captain. That wrongful bypass allegation, which the City denied, was never litigated to conclusion.
We agree with the City and the Board that the City did not have to await a formal adjudication of the bypass claims in order to justify an accommodation to Szczygiel. As the Board's final decision correctly recognized, our judicial system strongly favors settlements. See, e.g., Nolan v. Lee Ho, 120 N.J. 465, 577 A.2d 143 (1990); Brown v. Pica, 360 N.J.Super. 565, 823 A.2d 899 (Law Div.2001), appeal dismissed, 360 N.J.Super. 490, 823 A.2d 854 (App.Div.2003). The City had a legitimate interest in curtailing litigation costs and obtaining repose in the Szczygiel matter. Although we do not know the details of Szczygiel's bypass claims and cannot comment on the overall merits of the settlement, including the City's payment of a *396 substantial amount of money, we are satisfied that the Board was free to consider that settlement as a factor in its assessment of good cause.
Apart from the settlement, the Board also was entitled to give weight to the fact that Szczygiel was only about six weeks short of meeting the one-year time-in-service requirement in the Captain's title. The Board also was permitted to recognize that Szczygiel more than surpassed that one-year mark in the interval between the exam closing date in February 2006 and his actual appointment in April 2007.
In sum, as a matter of state law, Martinez has failed to demonstrate that the Board acted either arbitrarily or capriciously in relaxing the service time requirement for Szczygiel, and in granting him a corresponding period of retroactive seniority. Absent such a demonstration of capriciousness, an administrative agency's exercise of discretion is ordinarily sustained on appeal. Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 16, 890 A.2d 922 (2006); Burris v. Police Dep't, Twp. of W. Orange, 338 N.J.Super. 493, 496, 769 A.2d 1112 (App.Div.2001).
State law aside, Martinez contends that the City and the Board transgressed the 1980 Consent Decree by not strictly enforcing the one-year-in-grade requirement. We are mindful that the Consent Decree, which remains in force today, is a remedial instrument aimed at eradicating alleged patterns of discrimination against persons of color in the hiring and promotion of firefighters. Courts have recognized "a strong public interest in preserving and enforcing the delicate settlement embodied in the 1980 Consent Decree." United States v. New Jersey, 37 F.Supp.2d 373, 374 (D.N.J.1999). We are likewise cognizant that Martinez, as a Hispanic minority, is a member of the class of public employees that the Decree is designed to protect.
Paragraph 7(b) of the 1980 Consent Decree plainly states that the one-year-in-grade requirement governing applicants for job titles "for each higher rank" above Lieutenant or Captain "shall be one year." The Decree contains no exceptions to that mandate. The Board reasons that the Decree is inapplicable here, because Szczygiel accumulated more than a year of service time as Captain after the exam closing date.
We do not share the Board's confidence that the 1980 Consent Decree lacks some bearing on the merits of this case. Nor are we certain that the Decree impliedly authorizes a waiver of the service time requirement for good cause under state law, or that the United States Department of Justice would consent to a waiver of the requirement as to Szczygiel, a non-minority. We also find significant that the Board has in the past required the acquiescence of the Department of Justice to a deviation from the terms of the Decree.
That being stated, the question of compliance with the 1980 Consent Decree, a federal edict, is best reserved for the Department of Justice and the United States District Court. We shall not attempt here to presume the intentions of the federal government, or to try to interpret the Decree or ascertain its rigidity. Such issues instead should be sorted out, if anywhere, in a federal tribunal.
We were informed at oral argument by the City's attorney that the Department of Justice has made inquiry into this matter, and that counsel furnished the Department with copies of relevant documents. Although the Justice Department has not yet asserted a position in this matter or attempted to restrain or undo Szczygiel's promotion and retroactive seniority, we cannot assume that the Department's inaction *397 thus far means anything. Consequently, we affirm the Board's waiver of the one-year-in-grade requirement as to Szczygiel under N.J.A.C. 4A:1-1.2, without prejudice to the possibility that the United States may object to that disposition and seek appropriate remedies in federal court. The federal compliance issue is therefore not resolved here, but instead reserved for potential action by the Department of Justice and the United States District Court.[12]
We now turn to the facet of the Szczygiel settlement that guaranteed Szczygiel would receive the promotion to Deputy Chief, so long as he scored first on the promotional exam. We find this aspect of the settlement troublesome, for several reasons. First, the Board was never informed of the guarantee prior to its January 31, 2007 final determination of Martinez's appeal. Second, the guarantee was not contemporaneously disclosed to Martinez, who had every right to expect when he applied for the job and sat for the examination that the normal selection processes under the Rule of Three would be observed. Instead, the guarantee was divulged to Martinez and the Board after-the-fact, essentially as a fait accompli.
Apart from these procedural shortcomings, the substance of the guarantee is also problematic. As we have already noted, the Rule of Three is designed to channel the exercise of discretion of appointing authorities in selecting candidates from a ranked civil service list. We have serious doubts that the Legislature wished to allow municipalities to dispense with the Rule of Three and reach agreements with applicants guaranteeing them a position if they scored high enough on an exam. Such individualized guarantees run contrary to the objectives of the civil service system. The guarantee in this case, which is tied exclusively to the applicants' test scores, also deviates from the Rule of Three's aim to include "other merit criteria" in the selection process, independent of test scores. Gallagher, supra, 190 N.J.Super. at 399, 463 A.2d 969.
Although we ascribe no pernicious motives here to the City or any of its employees, we discern no legal authority for the guarantee extended to Szczygiel as part of his settlement. The City may well have misused the civil service process in the past in bypassing Szczygiel at the Captain's rank, but it went too far in trying to correct the situation by granting Szczygiel a score-dependent promotional guarantee to Deputy Chief.
The Board's July 27, 2007 final agency decision never passed upon the enforceability of the guarantee provision in the settlement. Indeed, at oral argument before us, the Deputy Attorney General confirmed that the Board did not know about the guarantee proviso until after it had already ratified the settlement conceptually in its January 31, 2007 decision in I/M/O Szczygiel.[13]
For these many reasons, we cannot on this record sustain or enforce the guarantee contained in the City's settlement with Szczygiel. Nor can we affirm the City's ensuing actions and the Board's final decision implementing that aspect of the settlement. We, therefore, sever that provision from the settlement, the remainder of *398 which remains enforceable. See Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 33, 607 A.2d 142 (1992) (courts have authority in certain situations to sever illegal provisions of an agreement and enforce the remainder). Likewise, we partially vacate the Board's final agency decision of July 2007, insofar as it may be read to impliedly approve of the guarantee and the City's implementation of that guarantee.
To remedy the problems stemming from the guarantee, and the City's unauthorized departure from the Rule of Three, we remand this matter to the Board and the Department of Personnel, for further administrative action consistent with this opinion. More specifically, we direct that the City, under the Department's supervision, repeat the final selection process for Deputy Chief, utilizing the normal Rule of Three procedures.
On remand, Szczygiel and Martinez shall remain among the top three candidates, and the City's current appointing officials are free to select either one of them as Deputy Chief, or the third name on the list. The selection must be based upon considerations of overall merit and fitness, including but definitely not limited to Szczygiel's test ranking. It may well be that the City will once again select Szczygiel, but it is no longer compelled to do so because of the settlement. The remand shall be completed within thirty days of this opinion.[14]
Government must "turn square corners." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 427, 495 A.2d 1313 (1985). "Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another." Ibid. The City of Passaic was obligated to adhere to that tenet in the manner in which it appointed a Deputy Fire Chief. Although Kenneth R. Martinez ultimately may not be entitled to serve in that position for the City, he is entitled to a fair, open, and regular promotional process.
We have considered all of the remaining arguments presented by Martinez, and conclude that they lack sufficient merit to be discussed in the written opinion. R. 2:11-3(e)(1)(D) and (E).
Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.
NOTES
[1] See N.J.A.C. 4A:4-2.6(a)(1) ("Applicants for promotional examinations shall ... [h]ave one year of continuous permanent service for an aggregate of one year immediately preceding the closing date in a title or titles to which the examination is open.").
[2] Although this exam date does not appear in the record, counsel informed us of it at oral argument.
[3] The particular circumstances involving Szczygiel's bypass, and the City's reasons for bypassing him, are not explained in the present record.
[4] Although no party to this appeal has moved to seal any portion of the record, including the settlement agreement, we need not mention the precise settlement amount.
[5] Indeed, the written settlement agreement executed by the parties recites that it is "confidential" even though it involves public offices and the payment of public funds. The agreement also includes what is, in essence, a "gag order", specifying that the settling parties "will not talk about, discuss or consult with, advise, counsel or otherwise cooperate with or assist any employees or former employees of the City of Passaic and/or City of Passaic Fire Department in the pursuit of legal or administrative action against the City [and other named individuals], including but not limited to any action(s) in connection with any matters relating to ... Christopher Szczygiel's employment, unless compelled to do so by court order or lawful subpoena." (Emphasis added).
[6] The Board's method of granting Szczygiel sufficient in-service time as Captain varied from the method specified in the settlement agreement. The agreement, as we have already noted, called for Szczygiel to receive Captain status retroactive to June 25, 2004, and made no mention of Szczygiel's service as Captain after the February 28, 2006 exam closing date. The Board's final decision in Szczygiel, however, alludes to both "the retroactive date of seniority" as specified in the agreement, "and [Szczygiel's] service as Fire Captain for the past one year and ten months." These dual considerations led the Board to "accept the time [Szczygiel] served as Fire Captain after the closing date to satisfy the one-year-in-grade requirement[.]"
[7] There is no indication in the record that the Law Division ever conducted, or was ever asked to conduct, a fairness hearing concerning the settlement terms on notice to other parties affected by the settlement, including Martinez. See, e.g., Martin v. Wilks, 490 U.S. 755, 775-86, 109 S.Ct. 2180, 2191-97, 104 L.Ed.2d. 835, 853-59 (1989) (discussing the technique of a "fairness hearing" used to evaluate a proposed settlement of employment litigation involving numerous firefighters); Builders League of South Jersey, Inc. v. Gloucester County Utils. Auth., 386 N.J.Super. 462, 470-72, 902 A.2d 253 (App.Div.2006) (endorsing "fairness hearings" in various litigation contexts as a means to evaluate the reasonableness of settlements affecting numerous individuals). We do not hold that such a hearing was required in this case, although it may have obviated the present appeal.
[8] Cajzer has not pursued the appeal further to this court.
[9] See, infra, at pp. 72 to 73, 956 A.2d at 394 to 395.
[10] In its decision, the Board did caution the City from utilizing the "acting" designation in the future.
[11] Although Szczygiel was served with the notice of appeal, and had previously participated through his counsel in the administrative proceedings, he has chosen not to appear in this appeal.
[12] We presume that counsel in this case will promptly furnish an appropriate representative of the Justice Department, by way of update, with a copy of this opinion.
[13] The Board's unawareness of this material feature of the settlement would have been avoided if the Board had insisted on seeing a copy of the written settlement agreement, before it gave that settlement its seal of approval. We urge the Board to require such documentation in the future to guard against similar oversights.
[14] We recognize that this disposition places in jeopardy Szczygiel's promotion to Deputy Chief. However, we note that Szczygiel was served with Martinez's notice of appeal and chose not to file a brief or otherwise appear in this court. We do not comment on the hypothetical implications for Szczygiel's settlement with the City if, on remand, the City now chooses to promote Martinez or the other applicant ranked in the top three in lieu of Szczygiel. We trust that the City, the Department of Personnel, and the Board would be able to fashion an appropriate remedy if that situation occurred.